STATE OF WEST VIRGINIA

*In re* **T.A.**

**No. 19-0627** (Harrison County 19-JA-23-3)

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.A., by counsel Jenna L. Robey, appeals the Circuit Court of Harrison County's June 17, 2019, order terminating his parental rights to T.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Jake Wegman, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Dreama D. Sinkkanen, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights instead of imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR filed an abuse and neglect petition against petitioner and T.A.'s mother due to the birth of a drug-exposed infant. The petition alleged that the parents' conduct constituted an imminent danger to the child because of the child's positive drug exposure at birth, the mother's substance abuse during the pregnancy, and petitioner's knowledge of–and failure to prevent–such substance abuse. Specifically, the mother acknowledged usage of methamphetamines, amphetamines, and marijuana while pregnant. The petition also alleged the mother tested positive for methamphetamines and amphetamines during a drug screen taken contemporaneously with T.A.'s birth. Further, the mother "reported that [petitioner] was aware of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

her drug use during her pregnancy," and petitioner himself acknowledged the mother's substance abuse and admitted that he fought with her about it. On March 18, 2019, petitioner waived his right to a preliminary hearing and the circuit court ratified the child's removal from petitioner's custody. At the hearing, the circuit court also granted the DHHR's motion to have petitioner and the mother submit to random drug testing.

In April of 2019, the circuit court held an adjudicatory hearing, with petitioner appearing in person. At the hearing, the circuit court found by clear and convincing evidence that petitioner "knew or should have known" that the mother was "abusing substances while pregnant," and that petitioner should have done more to prevent such usage. In addition to the mother's substance abuse, the circuit court found that petitioner suffered from substance abuse. A DHHR employee testified that petitioner tested positive for several substances on the drug screen that was administered on the morning of the hearing.[2] During the hearing, petitioner also admitted he "is an addict and uses methamphetamine to cope or when he would otherwise be drinking." Accordingly, in its adjudicatory order, the circuit court found petitioner to be an abusing parent. Following the adjudicatory hearing, petitioner filed for a post-adjudicatory improvement period.

In May of 2019, the circuit court held a dispositional hearing. At the hearing, the DHHR presented testimony that petitioner admitted knowing the mother was using methamphetamine and marijuana in the weeks before the child's birth. A DHHR employee further indicated that petitioner had given "a couple different responses" when asked what he knew about the mother's substance abuse. According to the witness, at first petitioner denied knowledge of her substance abuse while pregnant before recanting and acknowledging they had "actually fought about it a couple weeks before she gave birth." Additionally, on cross-examination, petitioner acknowledged his own usage of methamphetamine and other substance abuse as a way to "escape reality." As a result, the DHHR sought denial of petitioner's motion for an improvement period and termination of his parental rights. Based on this evidence, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, given that petitioner "continue[d] to abuse unprescribed pain pills and methamphetamine" and failed to "recognize he need[ed] long-term inpatient treatment." The circuit court further found that petitioner failed to demonstrate by clear and convincing evidence that he was "likely to participate" in an improvement period and that termination of petitioner's parental rights was in the child's best interests. Accordingly, the circuit court denied petitioner a post-adjudicatory improvement period and terminated his parental rights to the child.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]Petitioner tested positive for amphetamine, methamphetamine, benzodiazepine, and buprenorphine. Petitioner also testified positive for additional drugs in other screens.

[3]T.A.'s mother is currently participating in an improvement period. As such, the permanency plan is reunification with the mother upon successful completion of that improvement period. The concurrent permanency plan is adoption with the paternal uncle and aunt, with whom the child is currently placed.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying his motion for a post-adjudicatory improvement period because he was "attending some drug screens . . . and participating in other aspects of the case." Petitioner also argues he "acknowledged a drug problem" during his dispositional hearing testimony and that he would participate in services. In light of this, he argues that the circuit court should have granted him a post-adjudicatory improvement period. We disagree.

Notably, petitioner does not dispute the circuit court's finding that he knew about the mother's substance abuse, including methamphetamine, just "a few weeks prior to giving birth." Petitioner also does not dispute that, other than taking the mother to a counselor, he "did not make any attempts . . . to stop her use while she was pregnant." Instead, petitioner acknowledges that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

While it may be true that petitioner has previously acknowledged struggling with substance abuse, he has at other times flatly denied such abuse, even when confronted with positive drug screens and other evidence. Additionally, the circuit court found by clear and convincing evidence that petitioner knew or should have known about the mother's substance abuse while pregnant. Although there was testimony petitioner attempted to get the mother to a counselor, there was no indication petitioner tried to get her into a treatment program or took other efforts beyond this. And, although the DHHR indicated that petitioner was participating in treatment during the proceedings, the record shows that petitioner tested positive for several substances and failed to submit to drug screens on other occasions.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has

discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's failure to acknowledge his drug addiction and how his actions constituted abusive and neglectful behavior, the granting of an improvement period would have been futile. While petitioner argues that nothing precluded the circuit court from granting him an improvement period in this case, there is no evidence that he would comply with an improvement period. Accordingly, we find no error in the circuit court's denial of his motion.

Next, petitioner alleges that the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5), which provides, in part,

> [u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, [a circuit court may] commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

However, the same evidence set forth above supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Additionally, under West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

With these parameters in mind, the record clearly supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, given his untreated drug addiction and knowledge of substance abuse by the mother while she was pregnant. While it is true that petitioner may be able to undergo some treatment in the future for his substance abuse, such possible improvement was based on pure speculation. Indeed, petitioner blamed failed laboratory results for his positive drug screens and denied that he had a substance abuse problem on several occasions. Further, when petitioner availed himself of the DHHR's services, he missed scheduled appointments, fell asleep in multiple parenting classes, and stated

he would only attend rehab "to please the MDT," and not on his own accord. Despite this, petitioner claims that he should have been granted a less-restrictive disposition because he might eventually be able to correct the conditions of abuse and neglect, but we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted).

While petitioner argues that the circuit court should have employed a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, as the circuit court's findings are fully supported by the record below, we find no error in the termination of petitioner's parental rights.

Lastly, because the proceedings in circuit court regarding the mother are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give

5

priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court and its June 17, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: March 13, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison